**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**STEVEN TYRONE BRATCHETT,**
**Petitioner,**

**v.** **Case No. 22-C-0633**

**RANDALL HEPP,**
**Respondent.**

---

## DECISION AND ORDER

Steven Tyrone Bratchett petitions for a writ of habeas corpus under 28 U.S.C. § 2254. He challenges his Wisconsin convictions of burglary, armed robbery, and attempted third-degree sexual assault.

## I. BACKGROUND

On November 15, 2015, a woman identified as S.D. reported that she had been robbed in her apartment near the Marquette University campus in Milwaukee. According to her, two black males knocked on her door and, when she opened it, forced their way inside the apartment. One of them claimed to have a gun. They took S.D.'s cellular phone and debit card and demanded that she give them the access code to withdraw funds. One of the males, whom S.D. would later identify as Bratchett, told S.D. to go into her bedroom and followed her there. He ordered her to get on the bed and to remove her clothes. S.D. did not remove her clothes, but the man grabbed her gym shorts near the waistline and began pulling at them. S.D. put her own hands on her shorts and said, "No. You're not doing that. I'm not doing that." The males then left her apartment.

At about the same time, officers with the Marquette police department were searching the area because they had observed two men follow female students into the

apartment building. They apprehended R.R., who was believed to have been one of the males who participated in the robbery. When the Marquette police learned about the robbery of S.D., they called the Milwaukee Police Department ("MPD"). Officers with that department searched the area and found S.D.'s phone and bank card along with Bratchett's state photo identification card. Forensic analysis of one of S.D.'s purses revealed a fingerprint that an expert witness would later identify as Bratchett's.

On the night of the robbery, at approximately 1:00 a.m., MPD officers presented S.D. with a photographic array consisting of six subjects, including Bratchett. She identified Bratchett as the individual who had entered her apartment and pulled at her gym shorts. She would later testify that this was not a "clear decision" and that she was only 60-to-70-percent sure that the photo she selected depicted the robber. S.D. testified that although the males were in her house for 10-to-15 minutes, the person she identified was wearing a big, hooded sweatshirt and consistently used his hand to cover his face.

Bratchett was initially charged with one count of burglary of a building or dwelling and one count of armed robbery, both counts as party to a crime and with a habitual-criminality penalty enhancer. The state would later amend the criminal complaint to include one count of attempted third-degree sexual assault.

Bratchett proceeded to trial, with his defense being that he was not one of the males who entered S.D.'s apartment. On the morning of the first day of trial, the court held a hearing on Bratchett's motion to exclude evidence of S.D.'s photo identification on the ground that it was unnecessarily suggestive, in violation of due process. Bratchett argued that the photo array was unnecessarily suggestive because he was the only person in the array with a neck tattoo and with two prominent moles on his cheek. The

trial court found that the photo array was unnecessarily suggestive for these reasons, but it also deemed the identification reliable and therefore admissible. The court allowed defense counsel to argue to the jury that the identification should be given no weight due to its suggestiveness and S.D.'s admission that she was not sure that she had picked the right person.

During the trial, S.D. testified about what happened when the robber brought her into the bedroom. She testified that, after he pulled at her shorts and she told him "no," the robber said, "I will fuck you. You better not be lying to me." (Trial Tr., Day 1, at 96.) S.D. testified that she understood this statement to mean the man intended to rape her. S.D. also testified that, as the man was leaving, he said that she "better not be lying" to him about not having another phone and that if she called the police, he would "come fuck [her]." (*Id.* at 96–97.)

The jury also heard evidence about Bratchett's identification card having been found near S.D.'s stolen property and heard testimony from forensic examiners in which they opined that the fingerprint found on S.D.'s purse was likely Bratchett's. The jury found Bratchett guilty on all counts. The court later sentenced him to three consecutive sentences that resulted in a bifurcated sentence of 18.5 years of initial confinement and 16 years of extended supervision.

Bratchett's appellate counsel began the direct-review process by filing a postconviction motion in the trial court alleging ineffective assistance of trial counsel. As is relevant here, the motion alleged that trial counsel was ineffective in failing to impeach S.D. with a prior statement she made to the police while they were investigating the robbery. In this statement, the police did not record that S.D. had told them that the robber

had threatened to "fuck" her while in her bedroom. Instead, the police reported that the robber was concerned about whether S.D. had a second phone that she could have used to call for help, and that he had repeatedly warned her not to "fuck with" him. Appellate counsel argued that impeachment on this matter would have aided Bratchett's defense to the attempted-sexual-assault charge because the statement as recorded by the police did not reflect an intent to commit sexual assault.

The trial court held a hearing on the postconviction motion, at which Bratchett's trial counsel testified. Trial counsel testified that he was aware of the police report but believed that the police may have just recorded S.D.'s statement incorrectly. Counsel also testified that he did not want to draw attention to either statement because they were both incriminating. Finally, counsel testified that his theory of the defense was that Bratchett was not at the scene of the crimes, and that bringing out this particular inconsistency would have distracted from the mistaken-identity defense.

The trial court denied Bratchett's postconviction motion in a written opinion. The court found that, because the overall defense strategy was to dispute that Bratchett was one of the robbers, trial counsel sensibly chose not to impeach S.D. on a matter that related only to the sexual-assault charge. (ECF No. 14-8 at 5.)

Bratchett appealed to the Wisconsin Court of Appeals. As is relevant here, Bratchett raised a due-process claim relating to the admission of the photo array and a claim of ineffective assistance of trial counsel based on his failure to impeach S.D. with her prior statement to the police. The court of appeals, with one judge dissenting, affirmed. Regarding the identification, the court of appeals agreed with the trial court that the array was unnecessarily suggestive, but it also agreed that the identification was reliable and

therefore admissible. With respect to the ineffective-assistance claim, the court determined that trial counsel had articulated a reasonable strategic reason for not impeaching S.D., namely, his desire to focus on the mistaken-identity defense. It therefore found that trial counsel had not performed deficiently. Having found no deficient performance, the court declined to reach the prejudice prong of the analysis.

Bratchett sought further review by the Wisconsin Supreme Court. After that court denied review, he filed his federal habeas petition. The petition raises the same two claims discussed above: (1) that the admission of the suggestive photo array violated due process, and (2) that trial counsel was ineffective in failing to impeach S.D. with her prior inconsistent statement. I consider these claims below.

## II. DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") applies to a habeas petition filed by a person in custody pursuant to a judgment of a state court. *See* 28 U.S.C. § 2254. It contains a deferential standard of review that prevents a federal court from granting the writ with respect to any claim that was adjudicated on the merits in state court unless the petitioner shows that the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Id.* § 2254(d). The Wisconsin Court of Appeals adjudicated both of Bratchett's claims on the merits, and therefore AEDPA's deferential standard of review applies.

### A. Due Process Challenge to Photo Array

The introduction of identification evidence resulting from police conduct that is "unnecessarily suggestive and conducive to irreparable mistaken identification" violates due process. *Stovall v. Denno*, 388 U.S. 293, 302 (1967). This principle applies to photo arrays. *Simmons v. United States*, 390 U.S. 377, 384 (1968). When a criminal defendant moves to suppress an identification on reliability grounds, the analysis proceeds in two steps. At the first step, the court asks whether the disputed array and accompanying procedures were "unnecessarily suggestive." *Manson v. Brathwaite*, 432 U.S. 98, 104 (1977). If the court finds the array unnecessarily suggestive, it proceeds to the second step, where it asks whether the unnecessary suggestiveness rendered the identification so unreliable that its admission violated the defendant's right to due process. *Id.* at 114.

At the reliability step, the court asks whether the witness's ability to make an accurate identification was "'outweighed by the corrupting effect' of law enforcement suggestion." *Perry v. New Hampshire*, 565 U.S. 228, 239 (2012). The court evaluates reliability under the totality of the circumstances. *Simmons*, 390 U.S. at 383. The Supreme Court has identified five specific circumstances (often called the "*Biggers* factors") that a court may consider when judging reliability:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers*, 409 U.S. 188, 199–200 (1972). The court must weigh these factors against "the corrupting effect of the suggestive identification itself." *Manson*, 432 U.S. at 114. Ultimately, unless there is a "very substantial likelihood of irreparable

misidentification," identification evidence is for the jury to weigh. *Id.* at 116. The Court has explained:

> We are content to rely upon the good sense and judgment of American juries, for evidence with some element of untrustworthiness is customary grist for the jury mill. Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature.

*Id.* The Seventh Circuit has added that misidentification is "irreparable" when "the source of the error is so elusive that it cannot be demonstrated to a jury, which therefore will give excessive weight to the eyewitness testimony." *United States v. Williams*, 522 F.3d 809, 811 (7th Cir. 2008).

In the present case, within several hours of the robbery, the police presented S.D. with a six-person photo array that included a photo of Bratchett. Bratchett's trial counsel argued (Tr. of Jury Trial, Day 1, at 22), and the trial judge agreed (*id.* at 25), that this array was unnecessarily suggestive because Bratchett was the only person with a neck tattoo and prominent moles on his face. However, S.D. testified at the hearing on the motion to suppress that she did not notice the neck tattoo or the moles during the robbery. (*Id.* at 14.) The only description she gave to police prior to the identification was that the person was African-American, about her height, and was wearing a big sweatshirt. (*Id.* at 7, 73.) She did not provide a description of any facial features at all. (*Id.* at 8.) S.D. testified that the reason she eventually selected Bratchett's picture from the photo array was because she recalled the robber as having a "boxy face." (*Id.* at 14–15.) The trial judge found that the state had met its burden to show that the identification testimony was reliable despite its suggestiveness primarily because the witness did not notice the tattoo or moles during the robbery and did not consciously rely on them when making her identification. (*Id.* at

26.) The trial judge expressed some concern over S.D.'s lack of confidence in her identification, but it determined that this problem related to the weight of the identification and was an issue for the jury to consider. (*Id.* at 27.) The court therefore allowed S.D. to testify about her photo identification of Bratchett. The court also allowed Bratchett's trial counsel to fully cross-examine S.D. about the weakness of her identification and about the aspects of the photo array that were suggestive. (Trial Tr., Day 2, at 41, 36–37.)

The Wisconsin Court of Appeals agreed with the trial court that the photo array was unnecessarily suggestive because Bratchett was the only person with a neck tattoo and prominent moles. *See State v. Bratchett*, No. 2020AP1347-CR, 2021 WL 5190928, at *4 (Wis. Ct. App. Nov. 9, 2021). But after applying the *Biggers* factors, the court determined that the identification was reliable and therefore admissible. Because AEDPA's deferential standard of review applies to this determination and the court of appeals applied the correct governing law, Bratchett may obtain habeas relief on this claim only if he shows that the court's determination was unreasonable. As the Seventh Circuit has noted in the context of reviewing a state court's admission of photographic-identification evidence despite its suggestiveness, this is a difficult standard to meet. *Reyes v. Nurse*, 38 F.4th 636, 648 (7th Cir. 2022).

I conclude that the decision of the court of appeals was a reasonable application of Supreme Court precedents and did not involve an unreasonable determination of the facts. S.D. testified that the suggestive aspects of the photo array—the neck tattoo and moles—did not affect her selection because she did not notice these features during the robbery. She instead focused on Bratchett's boxy face, which matched her recollection of

the robber.[1] For this reason, the suggestive aspect of the identification appears to have had very little impact on S.D.'s choice. Although it is possible that these features subconsciously affected S.D.'s choice or that they caused Bratchett to otherwise "stand out" from the other men, this possibility was not so great as to require a reasonable court to exclude the identification. Indeed, federal appellate courts have deemed identifications reliable even when the defendant stood out in some respect if the distinguishing characteristic was not part of the witness's description to police. *See United States v. Gilbert*, 721 F.3d 1000, 1007 (8th Cir. 2013); *United States v. Hargrove*, 508 F.3d 445, 450–51 (7th Cir. 2007).

Moreover, the question of reliability is a judgment call for the trial judge to make in the first instance, *United States v. Myers*, 892 F.2d 642, 646–47 (7th Cir. 1990), and thus even if AEDPA did not apply I would be required to defer to the state courts' determinations on this point. But AEDPA puts an additional thumb on the scale. As the Seventh Circuit has held in this context, "reasonable jurists will differ about where, precisely, to draw the line between flawed identifications that can go to the jury and those

---

[1] In the state court of appeals, Bratchett argued that the photo array was suggestive because he was the only person with a boxy face. However, trial counsel did not object to the array on that ground, and the trial court did not find that the array was suggestive for failing to include other men with boxy faces. The court of appeals adopted the trial court's suggestiveness finding without indicating that it thought the array was suggestive for not including more subjects with boxy faces. *Bratchett*, 2021 WL 5190928, at *4. In any event, it is inevitable that features such as "facial hair, ear sizes, and chin shapes will not be identical." *United States v. Johnson*, 745 F.3d 227, 230 (7th Cir. 2014). "A 'lineup of clones is not required.'" *Id.* (quoting *United States v. Arrington*, 159 F.3d 1069, 1073 (7th Cir.1998)). Further, S.D. did not mention the boxy face in her description of the robber, so the police would not have known to control for this feature. Thus, the court of appeals did not act unreasonably in failing to deem the array suggestive for not including other men with boxy faces.

that cannot." *Reyes*, 38 F.4th at 648. It follows that "AEDPA deference will often be appropriate in close cases so long as the jury heard and considered the evidence tending to impeach reliability." *Id.*

Here, the jury heard and considered testimony about how the neck tattoo and moles may have affected the identification. Trial counsel was able to make effective use of S.D.'s testimony that she did not notice these features during the robbery. After having S.D. admit that both the neck tattoo and the moles were distinctive, counsel pointed out that she did not mention either feature to the police on the night of the robbery. (Trial Tr., Day 2, at 36–37.) S.D.'s failure to mention Bratchett's distinctive features gave the jury a reason to think that someone else was the real robber. Accordingly, the state courts did not act unreasonably by allowing the jury to consider how much weight to afford the identification.

In light of the above, I do not see the need to march through the state court's discussion of the *Biggers* factors one-by-one. For the most part, it suffices to say that the state court made a reasonable determination based the totality of the circumstances. However, it is worth discussing one *Biggers* factor—the witness's level of certainty in her identification. S.D. was candid about not being certain that her identification was correct. She testified that she was only 60-to-70-percent sure that Bratchett was the robber. Researchers have questioned the value of this *Biggers* factor, noting that the confidence-accuracy relationship for eyewitness identification is weak. *See Phillips v. Allen*, 668 F.3d 912, 916-17 (7th Cir. 2012). But the Supreme Court has not removed it from the *Biggers* framework. Still, the Seventh Circuit has observed that an equivocal identification is not necessarily unreliable. *United States v. Hawkins*, 499 F.3d 703, 711 (7th Cir. 2007).

Particularly when, as here, the witness gives only a general description of the perpetrator after the robbery, an equivocal identification will be consistent with the level of detail expected of the witness's memory. *Id.* In such cases, "the equivocal nature of the identification affects the weight the jury might give to the earlier identification, not the reliability of the identification itself." *Id.* Thus, the Wisconsin Court of Appeals was reasonable in its determination that S.D.'s candid assessment of her identification supported its reliability. *Bratchett*, 2021 WL 5190928, at *5.

In his briefs in the court of appeals and, to a lesser extent, in his habeas briefs, Bratchett points to other ways in which the photo presentation may have failed to conform to best practices as described in the Wisconsin Department of Justice's Model Policy for Eyewitness Identification and in the social-science research. For example, he notes that S.D. may have been permitted to compare photos and was not restricted to viewing them sequentially, and that S.D. may have been told to pick the person who best fits her recollection even though the photos might not have included the suspect. (ECF No. 14-9 at 35–38 of 124.) However, "[t]he Supreme Court has not adopted a rule that only 'the best' approach (as the latest social science research identifies the best current understanding) can be used" when presenting witnesses with photo arrays. *Johnson*, 745 F.3d at 229. And no Supreme Court case holds that the additional deficiencies cited by Bratchett mandate exclusion of the resulting identification. Therefore, I cannot say that the court of appeals' failure to exclude the identification evidence based on those deficiencies (either alone or when combined with the suggestiveness caused by the neck tattoo and moles) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Supreme Court law.

Accordingly, Bratchett is not entitled to relief based on the admission of the identification evidence.

**B. Ineffective Assistance of Trial Counsel**

To establish a Sixth Amendment claim of ineffective assistance of counsel, Bratchett must show that his counsel performed deficiently and that he suffered prejudice as a result. *Strickland v. Washington*, 466 U.S. 668, 687–94 (1984). To establish deficient performance, he must demonstrate that counsel's representation fell below an objective standard of reasonableness as measured by prevailing professional norms. *Id.* at 687. This requires showing that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Id.* To establish prejudice, Bratchett must show that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 694.

Because the standards created by *Strickland* and § 2254(d) are both highly deferential, "when the two apply in tandem, review is 'doubly' so." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). However, where the state court resolved the claim based on one prong of the *Strickland* analysis and did not engage in an analysis of the other, the federal court reviews the unexamined prong de novo. *Toliver v. McCaughtry*, 539 F.3d 766, 775 (7th Cir. 2008) (citing *Wiggins v. Smith*, 539 U.S. 510, 534 (2003)). In the present case, the Wisconsin Court of Appeals addressed the deficient-performance prong but not the prejudice prong. Therefore, I review the former under the doubly deferential standard of review and the latter de novo. As explained below, the court of appeals' determination that trial counsel did not perform deficiently was reasonable. Therefore, I do not discuss the prejudice prong at all.

Bratchett contends that his trial counsel was deficient in failing to impeach S.D. with her prior statement to police, in which the police did not indicate that S.D. told them that Bratchett threatened to "fuck" her but wrote that Bratchett warned her not to "fuck with" him. He contends that the difference between the two statements was relevant to the charge of attempted third-degree sexual assault because the former statement, but not the latter, supports a finding that Bratchett intended to sexually assault S.D. At the hearing on the postconviction motion in state court, trial counsel testified that he was aware of S.D.'s prior statement (Tr. of Postconviction Hr'g at 8:5–8:14), and that he chose not to impeach her with it because he thought the police might have recorded the statement incorrectly (*id.* at 10), because he did not want to draw attention to either incriminating statement (*id.* at 37:3–37:12, 43:5–43:8, 44:3–44:9), and because it would not have supported Bratchett's mistaken-identity defense (*id.* at 40:25–41:7). The Wisconsin Court of Appeals determined that trial counsel offered rational strategic reasons for not impeaching S.D. with the statement and therefore did not perform deficiently. *Bratchett*, 2021 WL 5190928, at *7–8.

Under the "doubly deferential" standard of review, I cannot say that the court of appeals rendered a decision that was unreasonable. Impeaching S.D. on this ground would not have supported Bratchett's overall mistaken-identity defense. Moreover, attempting a secondary defense in which counsel argued that if Bratchett was the robber, he did not intend to commit sexual assault, would have been tricky. To effectively use the impeaching statement, counsel would have had to argue that the robber was not expressing a desire to commit sexual assault but was threatening to physically harm S.D. if she was lying about not having a phone. While this may have provided an additional

defense to the sexual-assault charge, it would have reinforced the other charges. Further, impeaching on this ground risked undercutting the mistaken-identity defense by implying that Bratchett had knowledge of what the robber really said or intended to accomplish in the bedroom. That is, if counsel argued that the robber intended to threaten S.D. rather than sexually assault her, the jury might have thought that counsel was aware of the robber's true intentions because Bratchett was the robber and told counsel what he said and intended. This is not to say that counsel's decision was unassailable or that another lawyer couldn't have reasonably decided to impeach S.D. with the prior statement, but it shows that the court of appeals did not reach an unreasonable conclusion when it found that trial counsel provided an acceptable reason for not doing so.

Accordingly, Bratchett is not entitled to habeas relief on his ineffective-assistance claim.

## III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED**. The Clerk of Court shall enter final judgment. Pursuant to Rule 11 of the Rules Governing § 2254 Cases, I find that the petitioner has not made the showing required by 28 U.S.C. § 2253(c)(2), and therefore I will not issue a certificate of appealability.

Dated at Milwaukee, Wisconsin, this 30th day of June, 2023.

/s/Lynn Adelman
LYNN ADELMAN
United States District Judge